1

2

3

4

5

6

7

8

9                          **UNITED STATES DISTRICT COURT**

10                              **DISTRICT OF NEVADA**

11

12    RONNIE DEAN PEARROW,

13                  Petitioner,                        3:05-cv-00405-HDM-VPC

14    vs.
                                                       **ORDER**
15    LENARD VARE, *et al.*,

16                  Respondents.

17    _____/

18    I.   Introduction

19             This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

20    by Ronnie Dean Pearrow, a prisoner at Lovelock Correctional Center, in Lovelock, Nevada.

21    Petitioner is serving prison terms upon convictions of sexual assault on a child in violation of Nev.

22    Rev. Stat. § 200.366 and lewdness with a child under the age of 14 in violation of Nev. Rev. Stat. §

23    201.230.

24             Petitioner's habeas corpus petition is before the Court with respect to its merits.

25    The Court will deny petitioner's remaining claim for habeas corpus relief, and will deny petitioner a

26    certificate of appealability.

1  II.  Factual and Procedural Background

2         On June 19, 2002, following a jury trial in the state court, the defendant was

3  convicted of sexual assault and lewdness and he was sentenced to two concurrent life sentences with

4  the possibility of parole.[1]  Def. Mot. to Dismiss Ex. 24.[2]  The convictions resulted from sexual acts

5  performed by the petitioner on his daughter.  Specifically, the information alleged that on or about

6  June 16, 2001, Pearrow digitally penetrated his daughter's vagina (the sexual assault charge) and

7  fondled her breasts (the lewdness charge).  At trial, Pearrow admitted to the digital penetration but

8  argued that it was not against the victim's will.

9         The petitioner alleges the evidence at trial was insufficient to convict him because the

10  victim consented to the physical contact.  The relevant facts at trial include the following.  On

11  December 18, 2001, Connie Campbell discovered a journal being kept by her daughter, Amanda.

12  Ms. Campbell read entries in the journal that made her "very concerned."  She confronted her

13  daughter, who didn't want to talk about it, and then removed the troubling pages from the journal

14  and called the police.

15         The journal entries that concerned Ms. Campbell related to her daughter's biological

16  father, the petitioner, and were written during the summer of 2001, when their daughter was 12 years

17  old.

18            Specifically, on June 16, 2001, Mr. Pearrow inserted one of
           his fingers into Amanda's vagina.  Of this Amanda wrote: "I hope he
19           does not do the thing he did last night because it hurt, it makes me
           suffer when he goes in a special spot.  Last night it hurt.  I was
20           hoping someone was going to wake up, but no one did.  And I did
           not want to."  But in this same entry, as brought out on cross-
21           examination, Amanda mentioned that it "felt good."  Amanda also
           testified on cross-examination that she did not tell her father "no"
22           when he placed his finger inside her – even thought she felt that she

23  ─────────────────────

24         [1] On the sexual assault count, the district court imposed a life sentence with the possibility of
    parole after 20 years; on the lewdness count, the court imposed a life sentence with the possibility of
25  parole after 10 years.

26         [2] The records of petitioner's state court case, appeal, and habeas petition, were filed as exhibits
    to the respondents' motion to dismiss (#14, # 15 & #16).  Accordingly, unless otherwise indicated all
    citations to exhibits will be to those filed with the motion to dismiss.

could.  Nor did she tell him to stop.  Her father did not use force or
threats against her or hold her down.

. . . .  Amanda's grandmother (Mr. Pearrow's mother) commented
about Amanda's behavior toward her father during the summer of
2001.  Specifically, she said that Amanda loved her father dearly and
would follow him everywhere and wouldn't leave him alone.
Sometimes he would have to go [into] his room and lock the door,
she testified, "in order to be left alone."  Even after June of 2001,
their relationship was pretty much the same as it always had been.

Mr. Pearrow's ex-wife . . . . noted Amanda's apparent need to
constantly be around her father when she was at their house. . . . Ms.
Pearrow admitted that Amanda's need for attention from her father
made her feel jealous at times.  And she felt that some of Amanda's
requests of her father were inappropriate (if, for example, she said
her name, he was required to kiss her).

Mr. Pearrow did not testify.  However, the jury was informed
during opening statements and closing arguments that Mr. Pearrow
admitted to putting his finger inside Amanda's vagina, but that it was
not against Amanda's will.

. . . . Counsel argued that Amanda never said no to her father when
he touched here [sic] even though she knew she could.

Ex. 33 (petitioner's opening brief on direct appeal 3-6) (citations omitted).  The transcript of trial

reveals that on direct examination, the victim testified as follows:

| | | |
|---|---|---|
| Q. | During the summer of 2001, specifically June 16th, did someone insert their finger into your vagina? |
| A. | Yes. |
| Q. | Who did that? |
| A. | My dad. |
| . . . . | | |
| Q. | When he did it to you, did you want him to do it? |
| A. | No. |
| Q. | Did you ask him to do it? |
| A. | No. |
| Q. | Anything you did that would make him think you wanted him to do it? |
| A. | No. |

Ex. 12 (Trial Tr. at 73:19-74:9).  The victim further testified:

| | | |
|---|---|---|
| Q. | When you write in your journal, "I was hoping that someone was going to wake up but no one did," what was going on? |
| A. | I was hoping that somebody would wake up. |
| Q. | Why? |
| A. | So that he would stop. |
| Q. | And that's because you didn't want him to do it, correct? |

A.    Yes.
. . . .
Q.    Amanda, did you want your dad to do what he did to you?
A.    No.

*Id.* at 76:12-77:2.

The court instructed the jury that it could find petitioner guilty of statutory sexual seduction as a lesser-included offense of sexual assault.  Ex. 13 at 17-18.  Defense argued to the jury that the jury should, at most, find the petitioner guilty of sexual assault.  Ex. 13 at 49-50.

On April 12, 2002, the jury returned verdicts, finding petitioner guilty on both counts as charged.  The petitioner was sentenced on June 19, 2002.

Petitioner filed a direct appeal on July 18, 2002.  Ex. 27.  The appeal asserted only that there was insufficient evidence to sustain his conviction of sexual assault on a child.  Ex. 33.  The Nevada Supreme Court affirmed the judgment of conviction on April 9, 2003.  Ex. 36.

Petitioner filed a state petition for habeas corpus relief (post-conviction) on July 2, 2003.  Ex. 39.  The petition was dismissed on October 7, 2004, after petitioner's counsel filed a notice of nonopposition to the respondents' motion to dismiss.  Exs. 51, 52, 54.  Petitioner appealed.  Exs. 58 & 59.  The Nevada Supreme Court affirmed on May 10, 2005.  Ex. 72.

Petitioner then submitted a *pro se* petition for a writ of habeas corpus to this Court, initiating this action, on July 13, 2005.  The petition contained 8 grounds for relief.  After petitioner paid the filing fee, the petition was filed in this court on November 7, 2005.

Respondents filed a motion to dismiss on January 26, 2006, arguing petitioner's claims were either unexhausted or procedurally barred.  The Court granted the motion and gave petitioner a choice between abandoning his unexhausted claims or dismissing the petition in its entirety to exhaust the unexhausted claims.  Petitioner elected to abandon his unexhausted claims and proceed on his exhausted claim.  Respondents filed an answer to the remaining claim on January 16, 2007.

III.   Federal Habeas Corpus Standards

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the legal standard for the Court's consideration of this habeas petition:

1
2
3

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

4
5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6
7

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8   28 U.S.C. § 2254(d).

9          A state court decision is contrary to clearly established Supreme Court precedent,

10  within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the

11  governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts

12  that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives

13  at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73

14  (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S.

15  685, 694 (2002)).

16         A state court decision is an unreasonable application of clearly established Supreme

17  Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

18  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

19  principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at

20  413). The "unreasonable application" clause requires the state court decision to be more than

21  incorrect or erroneous; the state court's application of clearly established law must be objectively

22  unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

23         In determining whether a state court decision is contrary to, or an unreasonable

24  application of, federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v.

25  Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2

26  (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue

made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of

5

1  rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

2  IV.  <u>Analysis</u>

3  Ground 1, petitioner's sole surviving claim, asserts that there was insufficient

4  evidence to sustain his conviction of sexual assault on a child in violation of Nev. Rev. Stat. §

5  200.366.  Petitioner argues the evidence was insufficient to prove beyond a reasonable doubt that his

6  digital penetration of his daughter was against her will.  Under § 200.366, sexual assault occurs

7  where "a person . . . subjects another to sexual penetration . . . against the will of the victim or under

8  conditions in which the perpetrator knows or should know that the victim is mentally or physically

9  incapable of resisting."

10  When a habeas petitioner challenges the sufficiency of evidence to support his

11  conviction, the Court reviews the record to determine "whether, after viewing the evidence in the

12  light most favorable to the prosecution, *any* rational trier of fact could have found the essential

13  elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

14  (emphasis in original); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  The Court must assume

15  that the jury resolved any evidentiary conflicts in favor of the prosecution, and the Court must defer

16  to that resolution. *Jackson*, 443 U.S. at 326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (*en

17  banc*).  The credibility of witnesses is beyond the scope of the Court's review of the sufficiency of

18  the evidence. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).  Under the *Jackson* standard, the

19  prosecution has no obligation to rule out every hypothesis except guilt. *Wright v. West*, 505 U.S.

20  277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326;  *Schell*, 218 F.3d at 1023.

21  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of evidence. *Jones*,

22  207 F.3d at 563.

23  Petitioner argued on direct appeal and argues here that the state pointed to "some

24  evidence" that his penetration of the victim was against her will but that evidence was not substantial

25  and did not constitute proof beyond a reasonable doubt.  He asserts that the evidence showed the

26  victim consented to his penetration of her because, among other things, she did not tell him to stop,

1    and she wrote in her journal that it "felt good."

2          The Nevada Supreme Court held that the evidence was sufficient ruled as follows on

3    petitioner's claim that there was insufficient evidence to support the jury's finding that petitioner's

4    penetration of his daughter was against her will:

5               In reviewing the evidence supporting a jury's verdict, this court
            need not be convinced of the defendant's guilt beyond a reasonable
6            doubt; instead, it must determine whether the jury, acting reasonably,
            could have been so convinced by competent evidence.

7
                . . . . The term "against the will of the victim" is not limited to
8            use of physical force or threats of death or great bodily harm; the court
            must also consider the relationship between the perpetrator and victim,
9            the victim's age and maturity, and indication of the victim's expression
            of unwillingness.  Submission is not the equivalent of consent.  A
10           victim is not required to do more than her age, strength, and the
            surrounding facts and attending circumstances would reasonably
11           dictate to manifest her opposition.

12               We conclude the evidence was more than sufficient for the jury
            to reasonably find that appellant subjected the victim to sexual
13           penetration against her will.  First, a rational trier of fact could
            determine from the victim's age and relationship to appellant that
14           appellant should have known that she was mentally and physically
            incapable of resisting.  Appellant is the victim's father, and the victim
15           was twelve years old at the time of the incident.  These facts alone
            provide a sufficient basis for sustaining appellant's conviction.  And
16           on the same basis, the jury could reasonably determine that the sexual
            assault was against the victim's will.  Further, the diary entry in which
17           the victim wrote of the pain caused by the sexual penetration indicates
            that she did not consent to it, as does her subsequent explicit rejection
18           of her father's advances, documented in a later diary entry.

19         The Court has carefully examined the transcripts of petitioner's trial, and concludes

20   the Nevada Supreme Court properly held that the evidence at trial was sufficient to support the jury's

21   finding that petitioner's penetration of the victim was done against her will or under circumstances in

22   which the petitioner knew or should have known the victim was mentally or physically incapable of

23   resisting.  The following evidence supports the verdict: the victim's testimony that she did not want

24   her father to penetrate her, that she did not ask him to do it, and that she did not do anything to make

25   him think she wanted him to do it, Ex. 12 at 73:19-74:9; the victim's testimony that as her father was

26   penetrating her she wanted someone to wake up "so that he would stop" because she didn't want him

1   to do it, *id.* at 76:12-77:2; the victim's testimony that she did not ask petitioner to penetrate her, that

2   she did not tell him she wanted it, and that she did not tell him it was okay to do it, *id.* at 80:24-81:7;

3   and the victim's testimony that petitioner inserted his finger into her vagina and that she did not want

4   him to do it, *id.* at 88:14-17.  While there is some contradictory evidence in the record,[3] the court

5   must infer that the jury resolved any conflicts in favor of the prosecution.

6          The state courts' ruling that there was sufficient evidence to support the jury's finding

7   that petitioner committed sexual assault on a child was not contrary to, or an unreasonable

8   application of, clearly established federal law, as determined by the Supreme Court of the United

9   States, and that ruling was not based on an unreasonable determination of the facts in light of the

10  evidence.  *See* 28 U.S.C. § 2254(d).  The Court will therefore deny petitioner's habeas corpus relief.

11  V.   Certificate of Appealability

12         The standard for issuance of a certificate of appealability calls for a "substantial

13  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  The Supreme Court has

14  interpreted 28 U.S.C. § 2253(c) as follows:

15              Where a district court has rejected the constitutional claims on
            the merits, the showing required to satisfy §2253(c) is straightforward:
16          The petitioner must demonstrate that reasonable jurists would find the
            district court's assessment of the constitutional claims debatable or
17          wrong.  The issue becomes somewhat more complicated where, as
            here, the district court dismisses the petition based on procedural grounds.
18          We hold as follows: When the district court denies a habeas petition on
            procedural grounds without reaching the prisoner's underlying constitutional
19          claim, a COA should issue when the prisoner shows, at least, that jurists of
            reason would find it debatable whether the petition states a valid claim of the
20          denial of a constitutional right and that jurists of reason would find it
            debatable whether the district court was correct in its procedural ruling.

21

22  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

23  (9th Cir. 2000).  The Supreme Court further illuminated the standard for issuance of a certificate of

24

25  _____

26       [3] Petitioner's daughter testified that she knew she could tell petitioner "no," that petitioner did
    not use any force or threats against her or hold her down, and that she wrote in her journal that the
    penetration "felt good."  Ex. 12 at 89-91.  She also testified that she told her father not to touch her on
    a subsequent occasion and he did not. Ex. 12 at 91:12-92:10.

1 appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

2    We do not require petitioner to prove, before the issuance of a COA,
that some jurists would grant the petition for habeas corpus.  Indeed, a
3    claim can be debatable even though every jurist of reason might agree,
after the COA has been granted and the case has received full
4    consideration, that petitioner will not prevail. As we stated in *Slack*,
"[w]here a district court has rejected the constitutional claims on the
5    merits, the showing required to satisfy § 2253(c) is straightforward: The
petitioner must demonstrate that reasonable jurists would find the district
6    court's assessment of the constitutional claims debatable or wrong."

7 *Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

8    The Court has considered the issues raised by petitioner, with respect to whether they

9 satisfy the standard for issuance of a certificate of appeal, and the Court determines that none meet

10 that standard.  The Court will therefore deny petitioner a certificate of appealability.

11    **IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus in this

12 action (#6 and #10) is **DENIED**.

13    **IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT**

14 **ACCORDINGLY.**

15    **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

16 **APPEALABILITY.**

17    Dated this 11th day of March, 2008.

18
19         _____
20         UNITED STATES DISTRICT JUDGE

21
22
23
24
25
26

9